UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TAMMY H.,

                              Plaintiff,

v.                                                          5:18-CV-467 (ATB)

COMM'R OF SOC. SEC.,
                              Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

MEGGESTO, CROSSETT & VALERINO, LLP      KIMBERLY A. SLIMBAUGH, ESQ.
Counsel for Plaintiff
313 East Willow Street
Suite 201
Syracuse, NY 13203
Watertown, NY 13601-9990

U.S. SOCIAL SECURITY ADMIN.               GRAHAM MORRISON, ESQ.
OFFICE OF REG'L GEN. COUNSEL
REGION II
Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278

ANDREW T. BAXTER, United States Magistrate Judge


## DECISION and ORDER

Currently before the Court, is this Social Security action filed by Tammy H. ("Plaintiff")

against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to

42 U.S.C. §§ 405(g) and 1383(c)(3).  This matter was referred to me, for all proceedings and

entry of a final judgment, pursuant to N.D.N.Y. General Order No. 18, and in accordance with

the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the

consent of the parties. (Dkt. Nos. 4, 10). The parties have each filed briefs (Dkt. Nos. 12 and 16) addressing the administrative record of the proceedings before the Commissioner. (Dkt. No. 8.)[1]

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born in 1970, making her 44 years old at the application date and 47 years old at the date of the ALJ's decision. Plaintiff reported completing the eighth grade and previously working as a laundress. At the initial level, Plaintiff alleged disability due to a back impairment, depression, migraines, hearing loss in her left ear, and restless leg syndrome, with an onset date of January 21, 2010.

### B.    Procedural History

On September 24, 2014, Plaintiff applied for Supplemental Security Income ("SSI"). Plaintiff's application was initially denied on January 6, 2015, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared at a hearing before ALJ Julia D. Gibbs dated February 14, 2017, at which a vocational expert ("VE") also testified, as did Plaintiff's husband and younger sister. (T. 40-101.) On May 9, 2017, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 16-37.) On March 19, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-6.)

### C.    The ALJ's Decision

The ALJ found that Plaintiff had not engaged in substantial gainful activity since

---

[1] The Administrative Transcript is found at Dkt. No. 8. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

September 14, 2014, the application date.  (T. 21.)  The ALJ further found that Plaintiff had

severe impairments including degenerative disc disease status-post surgery, ruptured left

tympanic membrane, depression, and panic disorder.  (T. 21-22.)  The ALJ determined that

Plaintiff did not have an impairment or combination of impairments that met or medically

equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix

(T. 22-24.)  Specifically, the ALJ considered Listings 1.04 (disorders of the spine), 12.04

(depressive, bipolar, and related disorders), and 12.06 (anxiety obsessive-compulsive disorders).

(Id.)  The ALJ found that  Plaintiff had the residual functional capacity ("RFC") to perform

sedentary work "except she can perform unskilled work that can be learned with only a short

demonstration; no more than occasional bending and squatting; she can have no more than

superficial interaction with the  public and co-workers; and she cannot have exposure to excess

background noise."  (T. 24.)  The ALJ determined that Plaintiff had no past relevant work.  (T.

29.)  The ALJ then found that particular jobs existed in significant numbers in the national

economy that Plaintiff could perform.  (T. 30.)  The ALJ, therefore, concluded Plaintiff was not

disabled. (T. 31.)

### D.    Issues in Contention

In her brief, Plaintiff argues that the ALJ improperly rejected the opinion of her treating

physician, Ellen Larson, M.D.  (Dkt. No. 12, at 17-19.)  Plaintiff also contends that the ALJ

failed to properly evaluate the medical opinion of consultative examiner, Jacqueline Santoro,

Ph.D.  The ALJ gave great weight to the opinion of consultative examiner, Tanya Perkins-

Mwantuali, M.D., but ignored the portion of this opinion which found Plaintiff had mild-to-

moderate limitations in her ability to reach.  (*Id*. at 19-22.)

Plaintiff contends that the ALJ's RFC determination was not supported by substantial evidence because of errors in considering the opinion evidence and because it is vague regarding her ability to hear. (*Id*. at 20-22.) Finally, Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's testimony pursuant to Social Security Ruling ("SSR") 16-3p. (*Id*. at 23-25.)

In his brief, Defendant argues that the ALJ properly weighed the medical evidence of record and provided persuasive reasons for assigning limited weight to Dr. Larson's opinion. (Dkt. No. 16, at 6-8.) Defendant explains that the ALJ gave great weight to Dr. Perkins-Mwantuali's opinion, the opinion of spine surgeon Rudolph Buckley, M.D., and Dr. Santoro's opinion, and significant weight to the opinion of non-examining state Agency psychological consultant, M. Marks, Ph.D. (*Id*. at 6-8.) Defendant also contends that the ALJ properly considered Plaintiff's ability to maintain a schedule and her ability to hear. (*Id*. at 8-9.)

Defendant maintains that the ALJ's RFC determination is supported by substantial evidence. (*Id*. at 10.) Finally, Defendant contends that the ALJ properly considered Plaintiff's credibility and cited substantial evidence in support of the RFC finding. (*Id*. at 10-11.)

## II.     RELEVANT LEGAL STANDARD

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See, e.g., Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." *Selian*, 708 F.3d at 417 (*citing Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971)).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical

> evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. SUBSTANTIAL EVIDENCE DOES NOT SUPPORT THE ALJ'S ANALYSIS OF THE MEDICAL OPINION EVIDENCE OR PLAINTIFF'S RFC

### A. Applicable Law

#### 1. RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, 11-CV-1386, 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. § 416.945. *See Martone v. Apfel*,

70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions that a plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta*, 737 F. Supp. at 183; *Sullivan v. Sec'y of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, 09-CV-1120, 2010 WL 3825629, *6 (N.D.N.Y. Aug. 17, 2010) (citing SSR 96-8p, 1996 WL 374184, at *7).

### 2. Treating Physician

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. § 416.927(c). "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, " . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

In deciding how much weight to afford the opinion of a treating physician, the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Greek*, 802 F.3d at

375.  However, where the ALJ's reasoning and adherence to the regulation is clear, and it is obvious that the "substance of the treating physician rule was not traversed," no "slavish recitation of each and every factor" of 20 C.F.R. § 404.1527(c) is required.  *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (citing *Halloran,* 362 F.3d at 31-32).  The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant.  20 C.F.R. §§ 416.927(c)(1)-(6).

### B. Relevant Evidence

#### 1. Dr. Larson's Treating Opinion

The record contains several assessments dated between 2014 and 2017 from Plaintiff's primary care physician, Dr. Larson, discussing Plaintiff's conditions including low back pain, depression, a ruptured left tympanic membrane, and hyperlipidemia, and finding various functional physical and mental limitations.  (T. 424-26, 582-83, 587-88, 628-35, 687-88, 691-718, 767-68.)  Dr. Larson noted that she had been treating Plaintiff for over ten years and saw her every three to twelve months.  (T. 628, 687-88, 692, 699-701.)  In medical source statements between December 2015 and September 2016 (before and after Plaintiff's June 2016 back surgery), Dr. Larson opined that Plaintiff was "very limited" with respect to walking, standing, sitting, lifting, carrying, pushing, pulling, and bending.  (T. 425, 583 (duplicate), 588, 768.)[2]  In

---

[2] In a December 17, 2014 medical source statement, Dr. Larson found that Plaintiff was "moderately limited" in those areas of physical functioning.  (T. 426.)  Dr. Larson also completed a medical source statement on January 13, 2016 which included findings that appear to be inconsistent with her other opinions about physical limitations during this time period.  A note on the first page of this statement, however, appears to state that the evaluation was limited to the impact of Plaintiff's ear problems, not her back pain.  (T. 702-07.)

her last assessment in February 2017, Dr. Larson stated that she had not fully assessed Plaintiff's functional limitations and deferred that evaluation to Plaintiff's spine surgeon and physical therapist. (T. 631-35.)

Between December 2015 and February 2017, Dr. Larson found that Plaintiff was very limited in her apparent ability "to function in a work setting at a consistent pace" and unable to meet competitive standards in maintaining regular attendance, completing a normal workday without interruption from psychologically based symptoms, and performing at a consistent pace without an unreasonable number and length of rest periods. (T. 583, 588, 635, 694, 768).[3]

In some of her assessments, Dr. Larson found that Plaintiff should avoid drastic temperatures because of a risk of getting water in her left ear and that she might be intolerant to temperature extremes because of her left ear condition. (T. 630, 634-35, 701, 705-06.) In May and September 2016, Dr. Larson concluded that Plaintiff was unable to work competitively at any job. (T. 425, 583, 587-88.)

The ALJ afforded limited weight to Dr. Larson's opinion insofar as it suggested that Plaintiff could perform less than sedentary work or that she was unable to work competitively at any level, or to function in a work setting at a consistent pace. (T. 28, 423-26, 581-88, 627-37, 686-719, 766-68.) The ALJ explained that Dr. Larson's opinions were out of proportion to the medical records as a whole, as well as the type and degree of treatment needed. (T. 28.) The ALJ also gave some limited weight to Dr. Larson's conclusion that Plaintiff had limited hearing in her left ear and should be limited in her exposure to noise, because, the ALJ concluded, this

---

[3] Dr. Larson generally found that Plaintiff had no limitations in other areas of mental functioning. (*Id.*) In her December 17, 2014 medical source statement, Dr. Larson found no evidence that Plaintiff had limitations in functioning in a work setting at a consistent pace. (T. 426.)

was supported by the physical examination findings. (T. 28-29, 627-37, 698-719.) The ALJ also afforded only limited weight to Dr. Larson's opinion that Plaintiff had marked limitations and was unable to meet competitive standards in several categories due to mental health impairments because this seemed to understate Plaintiff's functional capacity and was not supported by the medical records as whole. (T. 29, 686-97.)

### 2. Dr. Martyn's Opinion

On July 9, 2014, R. Martyn, M.D., completed an employment assessment noting Plaintiff's degenerative joint disease of the spine, sciatica, and depression. (T. 334-35.) Dr. Martyn found that Plaintiff was moderately limited in walking, standing, sitting, lifting/carrying, pushing, pulling, bending, using her hands, and stairs or other climbing. (T. 335.) The ALJ gave great weight to this opinion, insofar as it suggested that Plaintiff could perform at least sedentary work, because this was consistent with the medical records as a whole. (T. 28.) Dr. Martyn also opined that there was no evidence that Plaintiff had limitations in various areas of mental functioning, including the ability to perform in a work setting at a consistent pace. (T. 335.)

### 3. Dr. Buckley's Treating Opinion

In December 2015 and January 2016, Orthopaedic Surgeon, Dr. Buckley, assessed Plaintiff and noted that she had failed conservative treatment with physical therapy, chiropractor, pain management, and injections and was ready to proceed with lumbar surgery. (T. 443, 446, 449, 451.) On June 7, 2016, Plaintiff underwent L4-L5 laminectomy and decompression, L4-L5 right foraminectomy, L4-L5 discectomy, L4-L5 interbody fusion with implantable cage and demineralized bone matrix, L4-L5 segmental instrumented fusion with rods and screws, and L4-L5 posterolateral fusion with graft and demineralized bone matrix. (T. 457-459.)

Eight weeks after Plaintiff's surgery, Dr. Buckley opined that she should start to do more things around the house, but should not lift, push or pull more than 20 pounds and might do some bending. (T. 473-75, 512-14.) The ALJ concluded that this opinion suggested that plaintiff could perform "at least sedentary work" and was consistent with medical records as a whole, as well as objective findings. (T. 28.) However, the ALJ found that Plaintiff was more limited based in part on her subjective complaints. (*Id*.)

On October 24, 2016, five months after her surgery, Plaintiff advised Dr. Buckley that she was experiencing continued radiating pain in her back and hips during physical therapy and other activities. (T. 526.) Dr. Buckley opined that most of Plaintiff's pain was "from poor core muscles and weakness and tight hamstrings from chronic pain and surgery." (T. 528.) Dr. Buckley advised Plaintiff that her physical therapy needed to be less aggressive, and that "it will take her up to two to three years to regain some of her strength and movement and to increase her strength so that she will decrease her pain." (T. 529.)

### 4. Dr. Perkins-Mwantuali's Consultative Opinion

In December 2014, Dr. Perkins-Mwantuali observed that Plaintiff had a normal gait and stance, she could walk on her heels and toes without difficulty, her squat was at 50 percent, she used no assistive devices, she needed no help changing for the exam or getting on and off the exam table, and she was able to rise from a chair without difficulty. (T. 356.) Plaintiff had some limitation of range of motion in the cervical spine and lumbosacral spine and in the hips, tenderness to palpation in the lumbosacral spine, bilateral sacroiliac joint tenderness, lateral hip tenderness bilaterally, hyperreflexia in the lower extremities, sensory deficit in the bilateral distal legs below the knee to the feet, decreased sensation to touch and pain, and some reduced strength

in the left hip.  (T. 357.)  Straight leg raising testing of Plaintiff was positive at 30 degrees bilaterally.  (T. 357.)

Dr. Perkins-Mwantuali diagnosed low back pain for ten years, bulging discs at L4-L5, chronic pain with radiculopathy in the bilateral legs, restless leg syndrome, depression, bladder issues, hearing loss in the left ear, and elevated cholesterol, with a guarded prognosis.  (T. 358.) She opined that Plaintiff had mild-to-moderate limitation with communication due to hearing loss, no objective limitation with fine motor activity, *objective limitation with gross motor activities*, and mild-to-moderate limitation with squatting, kneeling, crawling, climbing, bending, twisting, lifting, pushing, pulling, reaching and carrying.  (*Id*.)

The ALJ afforded this opinion great weight "insofar as it is suggested that the claimant can perform at least sedentary work with postural limitations."  (T. 28.)  The ALJ concluded that the consultative examiner's opinions were consistent with the medical records and with the type and degree of treatment needed.  (*Id*.)  However, the ALJ reported that Dr. Perkins-Mwantuali found that Plaintiff had *no* objective limitations with gross motor activities, contrary to the language of the doctor's opinion.  (*Id*.)

### 5. Dr. Santoro's Consultative Opinion

In December 2014, consultative examiner Dr. Santoro observed that Plaintiff had an anxious affect, dysthymic mood, intact attention and concentration, mildly impaired recent and remote memory skills due to anxiety in the evaluation, and below average or lower intellectual functioning.  (T. 351.)  Dr. Santoro diagnosed persistent depressive disorder and panic disorder and opined that Plaintiff had no limitation in following and understanding simple directions and instructions, performing simple tasks, and maintaining attention and concentration.  (T. 352.) She opined that Plaintiff had mild limitations in learning new tasks, performing complex tasks

and making appropriate decisions, moderate limitations in relating with others and dealing with stress, and marked limitations in maintaining a regular schedule. (*Id*.) She stated that these difficulties were caused by psychiatric symptoms, and the results of the evaluation appeared to be consistent with psychiatric problems which might significantly interfere with Plaintiff's ability to function on a daily basis. (*Id*.)

The ALJ afforded great weight to Dr. Santoro's opinion that Plaintiff had mostly mild-to-moderate limitations due to mental impairments because this was consistent with the medical records as a whole and with Plaintiff's own description of her activities. (T. 29.) The ALJ afforded less weight to the opinion, insofar as Dr. Santoro concluded Plaintiff had marked limitations in maintaining a regular schedule because this was out of proportion to the type and degree of mental health treatment needed. (*Id*.)

### 6. Dr. Marks' Non-Examining Opinion

As part of the initial administrative determination in January 2015, Dr. Marks opined that Plaintiff had no restriction of activities of daily living; moderate difficulties in maintaining social functioning and concentration, persistence or pace; and no repeated episodes of decompensation of extended duration. (T. 107-09, 111-13.) Dr. Marks stated that Plaintiff was "able to understand and remember instructions and procedures, sustain a routine, and interact and adapt without marked difficulty." (T. 113.) The ALJ gave significant weight to this opinion that Plaintiff overall had no more than moderate limitations because it was consistent with the record as a whole. (T. 29, 103-15.)

### C.  Analysis

#### 1.  Ability to Meet the Functional Requirements for Sedentary Work

The ALJ determined that Plaintiff had the RFC to perform unskilled sedentary work ("generally performed while sitting"), as defined in 20 C.F.R. § 416.967(a), with no more than occasional bending and squatting.  (T. 24 & n.2.)  The full range of sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  20 C.F.R. §§ 404.1567(a), 416.967(a); SSR 96-9p, 1996 WL 374185, at *3.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  "Occasionally" means occurring from very little up to one-third of the time, and would generally total no more than about two hours of an eight-hour workday.  Sitting would generally total about six hours of an eight-hour workday.  SSR 96-9p, 1996 WL 374185, at *3.

In supporting this conclusion, the ALJ gave great weight to the December 2014 opinion of consultative examiner Dr. Perkins-Mwantuali, but reported that the doctor concluded that Plaintiff had no objective limitations with gross motor activities, when the doctor's opinion stated that the Plaintiff did have such objective limitations.  (T. 28, 358.)  The ALJ also gave great weight to the opinion of July 9, 2014 opinion of examining evaluator, Dr. R. Martyn that Plaintiff had "moderate" limitations for, inter alia, sitting, walking, and standing, which the ALJ concluded "suggested that [Plaintiff] can perform at least sedentary work."  (T. 28, 335.)  Although the ALJ did not mention this, Plaintiff's treating physician, Dr. Larson also opined that Plaintiff had moderate limitations for sitting, standing, and walking in a December 2014 medical source statement.  (T. 426.)

Indefinite medical conclusions, including those finding "moderate" limitations on Plaintiff's ability to sit do not, alone, provide substantial evidence for the ALJ's conclusion that she could sit for six hours of an eight-hour workday, at least without additional restrictions. *See, e.g., Richardson v. Astrue*, No. 10 Civ. 9356, 2011 WL 2671557, at *12 (S.D.N.Y. July 8, 2011) (the consulting doctor's vague conclusion that plaintiff's ability to sit was "mildly to moderately" impaired provides no support for ALJ's conclusion that plaintiff could perform sedentary work) (*citing, inter alia, Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000) (the "use of the terms 'moderate' and 'mild,' without additional information, does not permit the ALJ . . . to make the necessary inference that [the plaintiff] can perform the exertional requirements of sedentary work") (Rep't-Rec), *adopted*, 2011 WL 3477523 (S.D.N.Y. Aug. 8, 2011); *Woodford v. Apfel*, 93 F. Supp. 2d 521, 529 (S.D.N.Y. 2000) ("An ALJ commits legal error when he makes a residual functional capacity determination based on medical reports that do not specifically explain the scope of claimant's work-related capabilities."); *Young v. Comm'r of Soc. Sec.*, No. 7:13-CV-734 (ATB/NAM), 2014 WL 3107960, at *9 & n. 18 (N.D.N.Y. July 8, 2014) ("[T]he opinion of a consulting doctor that plaintiff had 'moderate limitations for sitting,' without more, does not amount to substantial evidence supporting the ALJ's determination that she could sit for six hours during an eight-hour workday.")[4]

---

[4] Some post-*Curry* cases have held that "use of terms like 'mild' and 'moderate' has been held to pass substantial evidence muster when medical evidence shows relatively little physical impairment" or the medical scenario is not complex. *Anderson v. Colvin*, No. 5:12-CV-1008 (GLS/ESH), 2013 WL 5939665, at *9 (N.D.N.Y. Nov. 5, 2013) (citation omitted). *See also Lewis v. Colvin*, 548 F. App'x 675, 677-78 (2d Cir. 2013) (the ALJ's determination that plaintiff could perform light work is supported, inter alia, by Dr. Datta's assessment of mild limitations for prolonged sitting, standing, and walking and direction that Lewis should avoid heavy lifting, and carrying).

The ALJ arguably marshaled adequate medical opinion evidence to support his ultimate finding that Plaintiff could perform several unskilled sedentary occupations, through the end of 2014, particularly in light of the fact that the ALJ's hypothetical to the VE included an additional restriction on sedentary work not reflected in the RFC stated in his written decision--that Plaintiff be allowed "to stand and stretch after sitting for 45 minutes, so she'd stand for maybe five, two, two, three minutes."[5] (T. 85-86.) However, the Court finds that, given the apparent worsening of Plaintiff's condition after 2014, and her uncertain prognosis after her back surgery, there was not substantial evidence to support the ALJ's RFC findings through the entire period ending on the date of his decision in May 2017. Accordingly, remand on this basis is required.[6]

As noted above, between December 2015 and September 2016 (before and after Plaintiff's back surgery), her primary care physician, Dr. Larson. concluded that Plaintiff was "*very* limited" with respect to walking, standing, sitting, lifting, carrying, pushing, pulling, and bending.[7] (T. 583, 588, 768) (emphasis added.) In December 2015 and January 2016, orthopaedic surgeon, Dr. Buckely saw Plaintiff and concluded that she was a candidate for

---

[5] The Plaintiff testified that she had "to get up and down all the time . . . . I could sit for, probably, 15 or 20 minutes, and then I've got to get up and walk around and then I'd come back and sit down." (T. 52-53.) ". . . [T]he concept of sedentary work contemplates substantial sitting . . ., [and] alternating between sitting and standing may not be within the concept of sedentary work." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) (citations omitted). An "individual [who] may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting . . . is not functionally capable of doing . . . the prolonged sitting contemplated in the definition of sedentary work. . . . Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will." SSR 83-12, 1983 WL 31253, at *4.

[6] On remand, the ALJ should clarify whether his RFC includes a limitation that Plaintiff must be able to change positions from sitting to standing and, if so, how often.

[7] There was prior gap in Plaintiff's treatment with Dr. Larson for approximately one year. (T. 27, 383-88, 767-768.)

lumbar surgery based on a history of worsening back pain that was not effectively managed by conservative treatment.  (T. 443-451.)

In supporting his RFC findings, the ALJ observed that Plaintiff's back pain was "treated conservatively until surgery and she appears to have recovered sufficiently for sedentary work within 12 months."  (T. 26.)  The ALJ selectively cited Dr. Buckley's observations, that Plaintiff was doing very well with physical therapy, with less pain two weeks and eight weeks after her June 2016 surgery, and that Plaintiff's pain from physical therapy, reported in October 2016, was due to poor core muscles, weakness, and tight hamstrings.  (T. 27, 28, 505, 512-14, 528).  In a separate part of his decision, the ALJ notes that "it was concluded that it may take [Plaintiff] up to two to three years to regain some of her strength and movement which will likely decrease her pain."  (T. 26.)  But the ALJ does not attribute this quote to Plaintiff's surgeon, Dr. Buckley, whose conclusion it was (T. 529), and erroneously cites other, unrelated parts of the record as the source of the quote.  (T. 26, citing Ex. 26F (Treatment Records of Hamilton Otolaryngology (T. 624-26) and Ex. 27F (Medical Source Statement of Dr. Larson (T. 627-636.)  *See, e.g., Royal v. Astrue*, No. 5:11-CV-456 (GTS/ESH), 2012 WL 5449610, at *6 (N.D.N.Y. Oct. 2, 2012) (while ALJs are entitled to resolve conflicts in the record, they cannot pick and choose only evidence from the same sources that supports a particular conclusion) (citing, *inter alia*, *Fiorello v. Heckler*, 725 F.2d 174, 175-76 (2d Cir. 1983)) (Rep't-Rec.), *adopted*, 2012 WL 5438945 (N.D.N.Y. Nov. 7, 2012).  Although, in her most recent medical source statement, Dr. Larson deferred to Dr. Buckley as assessment of Plaintiff's physical limitations, the ALJ did not obtain a

medical source statement from Dr. Buckley relevant to Plaintiff's capacity to perform sedentary work.[8]

There was no medical opinion evidence, after late 2014, that contradicts the findings of treating physician, Dr. Larson, that Plaintiff was very limited in her ability to sit, or which supports the ALJ's RFC finding that could meet the sitting requirements of sedentary work, at least after December 2015 and for a period of more than a year thereafter.[9] "While an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted a medical opinion to] or testified before him.'" *Balsamo v. Chater*, 142 F.3d 75, 81

---

[8] Dr. Buckley's treatment records do not directly discuss Plaintiff's limitations with respect to sitting. However, because treating physicians appropriately focus on a patient's diagnosis and treatment, it is unreasonable for the ALJ to expect that Plaintiff's treating physicians would document and support detailed functional assessments in their treatment notes. *See, e.g., Oakley v. Colvin*, No. 3:13-CV-679 (GLS/ESH), 2015 WL 1097388, at *11 n. 22 (N.D.N.Y. Mar. 11, 2015) ("Absent a request for forensic opinions, treating medical sources' clinical notes focus on diagnoses and treatment modalities. They typically do not delve into patients' specific physical capacities to lift, carry, sit, stand, walk, stoop, climb, etc."); *Ubiles v. Astrue*, No. 11-CV-6340T, 2012 WL 2572772, at *9 (W.D.N.Y. July 2, 2012) ("it is unreasonable to expect a physician to make, on his own accord, the detailed functional assessment demanded by the Act in support of a patient seeking SSI benefits.").

[9] Although this evidence was submitted to the Commissioner between the time of the ALJ's decision and the Appeals Council's denial of review, the results of a nerve conduction study of Plaintiff on August 17, 2017 revealed chronic right L-5 radiculopathy characterized by chronic neurogenic changes in two L-5 innervated muscles. (T. 8-12.) This further suggests that the Plaintiff did not, as the ALJ found, recover sufficiently to be able to perform sedentary work within 12 months after her back surgery. Even in cases such as this one, where the Appeals Council has denied review of the ALJ's decision, "it is well-settled that '[t]he role of the district court is to determine if the Appeals Council erred when it determined that the new evidence was insufficient to trigger review of the ALJ's decision.'" *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *4 (N.D.N.Y. Feb. 13, 2019) (citing, inter alia, *Allborty v. Comm'r of Soc. Sec.*, No. 6:14-CV-1428 (DNH/ATB), 2016 WL 770261, at *8 (N.D.N.Y. Jan. 28, 2016), (Rep't-Rec.), *adopted*, 2016 WL 796071 (N.D.N.Y. Feb. 22, 2016)). The Commissioner should address this, and other relevant new medical evidence, on remand.

(2d Cir. 1998). *See also Flynn v. Comm'r of Soc. Sec.*, 729 F. App'x 119, 121 (2d Cir. July 6, 2018) ("[W]hile a physician's opinion might contain inconsistencies and be subject to attack, a circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion.") (citing *Shaw v. Chater*, 221 F.3d 126, 135 (2d Cir. 2000)). The ALJ's reliance on much earlier medical opinions and his general references to the other medical evidence and type and degree of treatment received by Plaintiff were not sufficient to counter the more recent opinions of the treating physician relevant to Plaintiff's capacity to perform sedentary work. The ALJ's errors in weighing the medical evidence and applying the treating physician rule, at least as to a time period starting in 2015, warrants remand.

### 2. Ability to Maintain Attendance and Complete a Normal Workday

The ALJ similarly lacked medical opinion evidence to contradict the opinion of Dr. Larson that, *at least by December 2015*, through February 2017, that Plaintiff was very limited in her apparent ability "to function in a work setting at a consistent pace" and unable to meet competitive standards in maintaining regular attendance, completing a normal workday without interruption from psychologically-based symptoms, and performing at a consistent pace without an unreasonable number and length of rest periods. (T. 583, 588, 635, 694, 768). The records of Family Counseling Services corroborated Plaintiff's worsening depression, starting in April of 2016. (T. 402, 405.) While there was medical opinion evidence supporting the ALJ's conclusion with respect to Plaintiff's ability to function in the workplace and maintain a regular

schedule, that evidence all related to the period from 2014 through early 2015.[10]  The ALJ

acknowledged that the Plaintiff started consistent mental health treatment in 2015.  (T. 26.)

The lack of evidence supporting the ALJ's finding regarding Plaintiff's ability to

complete a normal workday without interruption and maintain regular attendance after 2014

would taint his conclusion that the Plaintiff was not disabled during that time period.  The VE

testified that, for the viable occupation that he identified based on the ALJ's unskilled sedentary

RFC, being off task more than 5% of the workday or more than one unscheduled absence every

other month (six per year) would not be tolerated.  On remand, the ALJ should reassess the

Plaintiff's ability, during the entire relevant time period, to stay on task during the workday and

the likelihood of unexcused absences from work while formulating her RFC and evaluating her

ability to perform competitive work.

### 3.  Plaintiff's Hearing Limitations

While the ALJ afforded some limited weight to Dr. Larson's conclusion that Plaintiff has

limited hearing in the left ear and can have only limited exposure to noise, the RFC findings may

not fully account for Plaintiff's limitations related to her left ear condition (which the ALJ found

to be severe as a "ruptured left tympanic membrane").  (T. 21, 24.)  Notably, the ALJ did not

---

[10] Although the ALJ gave great weight to the December 2014 opinion of consultative
psychologist, Dr. Santoro that suggested that Plaintiff could meet many of the mental demands of
unskilled work, he rejected her conclusion that Plaintiff had marked limitations in maintaining a
regular schedule.  (T. 29, 352).  In doing so, the ALJ relied primarily on the January 6, 2015
initial determination of state agency psychological consultant, M. Marks, Ph. D., who found that
Plaintiff was only moderately limited in her ability to maintain a normal workday and workweek
without interruption.  (T. 29, 112).  Other medical opinion evidence from that time period
provides support for the determination of Dr. Marks and the ALJ, including the December 2014
medical source statements of Dr. Larson (T. 426) and the July 2014 statement of Dr. Martyn (T.
335).

address Dr. Larson's opinion that Plaintiff should avoid drastic temperatures because of a risk of getting water in her left ear and that she might be intolerant to temperature extremes because of her left ear condition. (T. 28-29, 630, 634-35, 701, 705-06.)

The ALJ noted that Dr. Perkins-Mwantuali concluded Plaintiff had mild-to-moderate limitation with communication due to hearing loss, and stated that her opinion was consistent with the medical records as a whole. However, the only limitation included in the RFC related to hearing indicated Plaintiff could not have exposure to "excess" background noise. (T. 24, 28, 358.)[11] The ALJ did not further discuss environmental or communication limitations related to Plaintiff's hearing loss and left ear condition. The ALJ's oversight may amount to harmless error because the occupations identified by the VE based on the ALJ's RFC would not appear likely to expose Plaintiff to drastic temperatures or a risk of getting water in her left ear. (T. 86.) However, on remand, the ALJ should make RFC findings that properly account for the medical evidence regarding Plaintiff's limitations relating to her ruptured left ear drum.

### 4. Plaintiff's Reaching Limitations

Reaching is "required in almost all jobs," and a reaching limitation "may eliminate a large number of occupations a person could otherwise do." *Selian v. Astrue*, 708 F.3d 409, 422 (2d Cir.2013) (citing SSR 85–15, 1985 WL 56857, at *7)). The ALJ's RFC findings arguably failed to address Dr. Perkins-Mwantuali's opinion that Plaintiff had mild-to-moderate limitations in her ability to reach, despite affording this opinion great weight. (Dkt. No. 12, at 21-22; T. 28, 358.) Plaintiff maintains this is a significant error because the three jobs identified by the vocational expert all require the need for frequent reaching. (*Id*. at 22; T. 30, 82-101.) Plaintiff

---

[11] During the hearing, the ALJ, in his RFC hypothetical to the VE, restricted the Plaintiff to exposure to "excess" or "more than moderate" noise levels. (T. 83.)

argues the ALJ should have included the reaching limitation in the RFC or explained her reason for not including it because she gave great weight to Dr. Perkins-Mwantuali's opinion. (*Id.*) Defendant maintains that Plaintiff has not demonstrated that a further restriction on reaching was necessary. And, Dr. Larson, in a February 2017 Medical Source statement apparently covering only the period from October 2014 through November 2015, indicated that Plaintiff had no manipulative limitations, including reaching. (T. 631, 634, 636.) This issue would not warrant remand, but because the case is being remanded for other reasons, the Commissioner should consider the evidence regarding any reaching limitation and incorporate any such limitations into the RFC, as appropriate. (*Id.*; T. 24-29, 82-101.)

### 5. The ALJ's Step Five Determination and Nature of Remand

As discussed above, the ALJ's errors in the evaluation of the treating physician and the other medical opinion evidence infected the ALJ's RFC determination and tainted the ultimate decision that Plaintiff was not disabled, for at least some of the relevant time period. "When there are gaps in the administrative record or the ALJ has applied an improper legal standard . . . remand to the Secretary for further development of the evidence" is generally appropriate. *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980).

On remand, the Commissioner, perhaps in light of additional medical evidence, may be able to articulate why controlling weight should not be assigned to the opinions of the treating physicians, which contradicted the ALJ's RFC determination and the finding that Plaintiff was not disabled. Thus, this Court cannot conclude that "substantial evidence on the record as a whole indicates that the [plaintiff] is disabled[,]" and thus, I cannot recommend a remand solely for the determination of benefits. *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996). On remand, the Commissioner should properly analyze the opinions of the treating physicians and

the other medical evidence in re-assessing Plaintiff's RFC and her ability to perform competitive

work in the national economy.[12]

**WHEREFORE**, based on the findings above, it is

**ORDERED** that the decision of the Commissioner is **REVERSED** and this case

**REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a proper evaluation of the

opinions of the treating physicians and other medical and non-medical evidence, an appropriate

determination of Plaintiff's RFC and her ability to perform other jobs at Step Five over time, and

other further proceedings, consistent with this decision, and it is

**ORDERED**, that the Clerk enter judgment for the **PLAINTIFF**.


Dated: September 30, 2019

Andrew T. Baxter
U.S. Magistrate Judge

---

[12] Because remand is necessary and the Commissioner will be required to issue a new decision, the Court declines to reach findings on Plaintiff's other arguments pertaining to the ALJ's evaluation of her symptoms. (Dkt. No. 12, at 23-25.) However, on remand, the ALJ should conduct an appropriate evaluation of Plaintiff's symptoms, taking any new evidence into account.